# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

In Re: A.N.

No. 15-0208 (Mingo County 13-JA-89)

**FILED**

September 30, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.N.-2 ("A.N.-2" or "petitioner"), by counsel Diana Carter Wiedel, appeals the Circuit Court of Mingo County's February 9, 2015, order terminating her parental rights to A.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Lauren Thompson, submitted a response.[2] On appeal, petitioner argues that the circuit court erred in terminating her parental rights because (1) she completed her pre-adjudicatory improvement period but the circuit court failed to timely return the child to her; (2) she was prevented from meaningfully participating in the underlying proceedings following her incarceration on an unrelated matter; and (3) no home study was conducted on her home prior to disposition.[3]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2013, A.N.-1 was born prematurely and remained hospitalized until September of 2013. Before petitioner and the child left the hospital, the DHHR received a

---

[1]Because petitioner and the child share the same initials, we have distinguished them using numbers 1 and 2 throughout this memorandum decision.

[2]The guardian incorrectly titled her response a "Reply Brief." We refer the guardian to Rules 10(d), 10(e), 10(g), 11(h), and 11(j) of the West Virginia Rules of Appellate Procedure (requiring a guardian in abuse and neglect proceedings to file either a respondent's brief or summary response.).

[3]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

referral alleging that petitioner intended to take the child to live in a home with no electricity, heat, running water, or motor vehicle access. Petitioner then changed her plans twice prior to leaving the hospital. She stated her intention to take the child to a Motel 8 near Charleston, West Virginia. Shortly thereafter, she stated her intention to take the child to her aunt's one-room trailer in Dingess, West Virginia. Petitioner agreed to permit a Child Protective Services ("CPS") worker to conduct a walk-through of the aunt's home. Upon conducting the walk-through, the CPS worker found that the aunt's home was adequate but expressed her concerns that A.N.-1 had no crib or food assistance. CPS also noted that petitioner was on probation for grand larceny and was court-ordered to have no contact with A.N.-1's father.

In late September of 2013, A.N.-1 and petitioner moved from her aunt's home to a friend's home that CPS found to meet "minimal standards" for child safety. The home lacked regular heating, and a stove and multiple electric space heaters were used to heat A.N.-1's room. CPS noted that the electric space heaters were unsafe as a potential fire hazard but adequate.

In October of 2013, CPS conducted at least two visits to the home. During the first visit, petitioner informed CPS that the child had been to the hospital for health concerns, but the hospital confirmed that petitioner had acted appropriately and that the child had been released. CPS noted concern over the use of the home's fireplace for heat due to its disrepair. During the second visit in October of 2013, CPS found that petitioner continued to use the stove and electric heaters for heat. CPS noted the concern for fire safety and suggested a kerosene heater, which petitioner stated that she could acquire. CPS also informed petitioner that the home required smoke detectors, which any fire department would provide for no cost, and that various programs could offer her aid.

In November of 2013, CPS found two hypodermic needles near a sewer in front of the home. Petitioner denied that she used needles, and she apparently exhibited no needle marks. She further denied that anyone else in the home used needles. CPS noted that an electric heater was dangerously close to a "stack of movies," and petitioner had not yet retrieved a kerosene heater. During the visit, she retrieved that heater from another location. CPS and petitioner agreed to an in-home safety plan in the friend's home due to its condition.

During a final CPS visit to her home in November of 2013, petitioner was not present. Petitioner's friend informed CPS that petitioner was "staying out all night long" and spending time with A.N.-1's father in violation of her probation. Further, the friend, who was sick and unable to properly care for an infant, claimed that petitioner would ask her to keep A.N.-1 while petitioner "goes wherever." The friend decided at that time that petitioner and A.N.-1 could only reside in the home for one more night. CPS located petitioner at the home of another friend and asked her why she had not been using the kerosene heater and why she had missed a mandatory meeting to receive financial and other assistance. Petitioner claimed that she had no money to buy kerosene and admitted she was wrong to miss the mandatory meeting to receive assistance.

CPS informed petitioner's probation officer of her association with A.N.-1's father, and the probation officer stated that petitioner would be going to jail for violating her probation. On November 20, 2013, CPS took custody of A.N.-1 and filed the underlying abuse and neglect petition based on the conditions described above and her incarceration.

In December of 2013, the circuit court held a preliminary hearing. At the conclusion of the hearing, the circuit court found imminent danger to the child, and it set the matter for adjudication. The circuit court also ordered that both parents participate in services recommended by the multi-disciplinary team ("MDT") meeting.

In January of 2014, the circuit court held an adjudicatory hearing. Petitioner was not present at this hearing, but she had moved in writing for an improvement period. The circuit court granted both parents ninety-day pre-adjudicatory improvement periods, which were to begin following an MDT meeting to determine terms and conditions therefor. Several days later, the MDT met and determined issues such as child visitation and parental services. Petitioner was not present at this meeting.

In March of 2014, petitioner's service provider noted that petitioner appeared "fast-paced," "very hyper" and "shaky" during her joint session with A.N.-1's father. The service provider arrived at A.N.-1's father's home, where the sessions occurred, and found four other people in the home with candles burning and an open box of sandwich bags on the television. The service provider later reported her belief that A.N.-1's father appeared to be under the influence of drugs, and the condition of the home and the parents' behavior led her to the conclusion that they were using drugs.

Later in March of 2014, petitioner filed a petition for a domestic violence emergency protective order against A.N.-1's father for allegedly striking her in the face, pulling her hair, and sticking a needle in her arm. Thereafter, in June and July of 2014, petitioner's service provider noted that petitioner was uncooperative with services, lacked progress, appeared shaky, itchy, and tired during a June session, which the provider implied in her report were potential signs of drug use, and appeared to maintain a relationship with A.N.-1's father despite her assertions to the contrary. The provider also reported petitioner's failure to schedule appointments for services, and six attempts by the provider to complete unscheduled visits with petitioner were unsuccessful because she could not be located or otherwise contacted.

In November of 2014, the circuit court held a status hearing on petitioner's pre-adjudicatory improvement period, which had expired. Petitioner was not present at this hearing apparently due to her incarceration on an unrelated matter. The DHHR maintained that petitioner failed to keep in contact as required by the terms of her improvement period. The circuit court set the matter for adjudication.

In December of 2014, the circuit court held an adjudicatory hearing. Petitioner was present at this hearing.[4] The circuit court took judicial notice of all prior testimony and evidence and found that petitioner abused and neglected A.N.-1

In February of 2014, the circuit court held a dispositional hearing. Petitioner was again not present despite attempts to notify her by her counsel, the guardian, and a CPS worker, who

_____

[4]While the circuit court's order provided that petitioner was not present at this hearing, the transcript of said hearing indicates that she was present in person and represented by counsel.

claims to have directly informed her of the hearing date. Based on petitioner's lack of meaningful effort to follow through with her services, the circuit court terminated her parental rights to A.N.-1 It further ordered that post-termination visitation was not in the child's best interests. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court failed to return the child to her upon the successful completion of her pre-adjudicatory improvement period. In support of her claim, she cites to West Virginia Code § 49-6-12, which provides that, in the order granting the pre-adjudicatory improvement period, the circuit court shall order that a hearing be held to review the matter within sixty or ninety days of that order. However, petitioner cites no portion of the record on appeal wherein she objected to the circuit court's order or raised this issue before the circuit court at any time. Further, she did not move for such a review hearing at any time. It is well-established that "[o]rdinarily, a party must raise his or her objection contemporaneously with the trial court's ruling to which it relates or be forever barred from asserting that that ruling was in error." *State v. Whittaker*, 221 W.Va. 117, 131, 650 S.E.2d 216, 230 (2007); *see also* R. App. P. 10(c)(7) (stating that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."). We find no indication in the record on appeal that petitioner raised this issue below. Therefore, pursuant to our long-standing jurisprudence, we find that petitioner waived this issue for appellate review.

However, we note that little evidence supports petitioner's assertion that she successfully completed her improvement period as of April 13, 2014, which was the date on which her ninety-day improvement period expired. While petitioner asserts that she was employed with appropriate housing at the time her improvement period expired, she cites no support for these claims in the record on appeal. To the contrary, petitioner's service provider reported in March of 2014 that petitioner may have used drugs prior to a parenting class and that she lacked focus in her services at that time. Assuming petitioner had complied with her services and

4

demonstrated her parental improvement, we would find on review no reversible error in the circuit court's termination of petitioner's parental rights under the circumstances of this case. *See* Syl. Pt. 4, *In re: B.H. and S.S.*, 233 W.Va. 57, 754 S.E.2d 743 (2014) (holding that, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.").

Next, petitioner assigns error to the circuit court's termination of her parental rights due to her incarceration on an unrelated matter. While petitioner argues that she was prevented from making meaningful efforts to comply with services due to her incarceration on an unrelated matter, the evidence demonstrates that she failed to follow through with rehabilitative services while she was not incarcerated. At the outset, we note that "while the mere fact that someone is incarcerated will not result in automatic termination of parental rights, the parental rights of an incarcerated person may be terminated." *In re Cecil T.*, 228 W.Va. at 97, 717 S.E.2d at 881. In this instance, it is clear that the evidence supported termination. In addition to her incarceration during the pendency of these proceedings, the record on appeal reveals that petitioner's service provider described her as uncooperative or lacking progress for months prior to her incarceration. Further, there was circumstantial evidence that she used drugs in March of 2014 while on her pre-adjudicatory improvement period, and that she maintained contact with A.N.-1's father even after she filed a petition for a domestic violence emergency protective order against him. The circuit court could properly consider both the repercussions of petitioner's incarceration as well as her actions while released from state custody. The evidence clearly supported the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future. Based on the record before us, we cannot find that the circuit court committed reversible error on this issue.

Petitioner's third and final assignment of error is that the circuit court erred in terminating her parental rights without ordering a study of her home. However, petitioner cites no law requiring the circuit court to order such a home study prior to disposition in abuse and neglect proceedings. Moreover, while petitioner asserts that the DHHR's primary concern at the time of the petition's filing in November of 2013 was the safety and suitability of her housing, the petition also alleged that petitioner was "staying out all night long[,]" spending time with A.N.-1's father in violation of her probation, and was subject to impending incarceration. Moreover, during these proceedings, petitioner failed to follow through with rehabilitative services and was, by her own admission, incarcerated a second time. The suitability of her housing situation was, indeed, one factor that prompted the instant proceeding; however, it was not the only factor. Therefore, we find no error in the circuit court's termination of petitioner's parental rights to the child without ordering a home study prior to disposition.

For the foregoing reasons, we find no error in the circuit court's February 9, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: September 30, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II